**MORROW et al. v. McDANIEL et al.**

No. 2526.

Court of Civil Appeals of Texas. Beaumont. March 17, 1934.

**330**

King, Wood & Morrow, of Houston, for appellants.

Crook, Lefler & Cunningham, of Beaumont, for appellees.

'O'QUINN, Justice.

The appellants, Wright Morrow, receiver and trustee of Lumbermen's Reciprocal Association, and Lumbermen's Reciprocal Association, were plaintiffs below, and the appellees, C. H. McDaniel and Howard McDaniel, were defendants. We shall refer to them as plaintiffs and defendants.

Wright Morrow, as receiver and trustee of Lumbermen's Reciprocal Association, a reciprocal insurance association, organized under the laws of the state of Texas, and the Lumbermen's Reciprocal Association, through its said receiver and trustee, brought this suit in the Fifty-Eighth district court of Jefferson county against C. H. McDaniel and Howard McDaniel, individually and as members of the copartnership firm of McDaniel Bros., to recover upon three promissory notes in the sum of $510 each; said notes having been executed and delivered by the defendants to said Lumbermen's Reciprocal Association. Said notes were dated July 16, 1930, and numbered 1, 2, and 3, and were due and payable 30, 60, and 90 days after date, respectively. They provided for interest at the rate of 8 per cent. per annum from date until paid, and contained the usual provision for 10 per cent. attorney's fee in the event the notes were collected by or through legal proceedings. Plaintiffs also sought to recover upon an open verified account alleged to be due plaintiffs by defendants, in the sum of $135.24, alleging same to be for insurance premiums.

Plaintiff Wright Morrow alleged his appointment and qualification as receiver and trustee of Lumbermen's Reciprocal Association, under orders of the Ninety-Eighth district court of Travis county, Tex., and alleged his authority to collect the assets of Lumbermen's Reciprocal Association and to bring and prosecute this suit.

The defendants answered by general demurrer, general denial, and specially pleaded failure of consideration for the notes, and specially answered that the notes were given by defendants to plaintiff Lumbermen's Reciprocal Association as payment on premiums for policies of insurance issued by said plaintiff to defendants in which said plaintiff agreed to protect defendants against liability to property caused by operations of defendants, who were then and there contractors, and, further, that said policies would cover the defendants' liability for loss, and that said plaintiff would defend in the name and on the behalf of defendants all suits for damages on account of damage to or destruction of property, and would pay all costs and expenses incurred, and all costs and interest accruing after entry of any such judgment up to the date of payment of its share of such judgment. Defendants further pleaded that "they had a suit against them by one Dr. Wilson" for damage to property, which suit the receiver of said plaintiff had failed and refused to defend, and that said receiver had declared that said Lumbermen's Reciprocal Association would "be unable to pay the same or any judgment founded in said suit," and that the defendants were put to the necessity and expense of employing counsel to defend said suit, wherefore the consideration for said notes had wholly failed.

The case was tried to the court without a jury, and judgment entered that plaintiffs take nothing by their suit and that defendants go hence without day and recover of plaintiffs their costs. From that judgment this appeal was taken.

The record discloses that three policies were issued; the first covering the period from October 1, 1927, to October 1, 1928, the second from November 7, 1928, to June 29, 1929, and the third from May 27, 1929, to June 29, 1930. The notes were executed for balance of premiums due on July 16, 1930. The first of these policies was in force when the work by defendants on the E. L. Wilson Hardware building was begun in 1927. Defendant C. H. McDaniel testified that the building was completed in 1928—the latter part. So it appears reasonably certain that the injury to the property for which the Wilson suit was brought occurred within the life of the first policy, which extended to October 1, 1928. However, there is nothing to indicate what portion of the notes was for premiums due on that policy.

The plea of failure of consideration was against all of the notes in their entirety. As to what indebtedness the notes were given for, C. H. McDaniel testified:

"Q. Your name is C. H. McDaniel? A. Yes sir.

"Q. You are a member of the firm of McDaniel Bros.?. A. Yes, sir.

"Q. You saw these notes that were given to the Lumbermen's Reciprocal Association here? A. Yes, sir.

"Q. I'll ask you to state whether or not those three notes were given as part payment for the premiums under any policies of any kind. A. They were given as part payment of premiums on policies of insurance with the Lumbermen's Reciprocal Association.

"Q. I will show you these policies; look at them and see if they were given as part payment on those policies. A. I think those were the policies.

"Q. Well, these cover the period of 1928 and 1929. Was the time in which you built the—A. I don't remember the exact date. We carried all of our insurance with this company and it was carried from year to year and from one policy to another.

"Q. These policies were issued—how long did you carry your insurance with the Lumbermen's Reciprocal Association? A. I don't know; over a period of, I guess, seven or eight years all told. They carried all of our Workmen's Compensation, Property Damage, P. L. and everything, and I think the policies were probably written every year for a period of year, renewing.

"Q. Have you the original here? A. I believe that (indicating) is one of the policies issued at the beginning of the construction of the building.

"Q. This policy was issued at the beginning of the construction of the building? A. Yes.

"Q. And what about these policies? A. These policies are extensions, I believe, of the policies issued, you see.

"Q. Extensions of this policy? A. Yes. This is 1929 and that is 1930 and that ends in 1928, I believe.

"Q. This from October 1, 1927—A. To 1928. This is 1928 to 1929 and this is 1929 to 1930.

"Q. These were the policies that were in force at the time you were building the Wilson Hardware Building? A. Yes. (The policies were exhibited.)

"Q. Mr. McDaniel, I believe you stated the Wilson Hardware Company Building was being constructed during the life of these policies? A. Yes, sir.

"Q. Do you know just when it was finished? A. That letter there—it seems to have stated in 1928. We began building, I know, during the coldest part of the year and had considerable trouble in December; it was finished up in 1928.

"Q. It began in 1927, did it not? A. Yes.

"Q. And was finished in the latter part of 1928? A. Yes.

"Q. Now, Mr. McDaniel, did you pay some of the premiums that were due on these policies? A. We paid from time to time on the bills as a whole."

On cross-examination:

"Q. Mr. McDaniel, I understand you to testify that the operations on this E. L. Wilson Hardware Building commenced about the latter part of 1927. A. Yes.

"Q. And that you completed the pile driving in the early part of 1928. A. Yes, sir.

"Q. When was the pile driving completed? A. I say along those two months period. The pile driving and excavations were completed the latter part of January.

"Q. This claim against you on which this suit was brought against you by Wilson and others originated out of that pile driving? A. Yes, sir.

"Q. Some time in December 1927 and January 1928? A. Yes, sir.

"Q. Mr. McDaniel, this policy introduced in evidence shows it was countersigned on the 13th of October, 1927, and went into effect on October 1, 1927, being this policy I hold in my hand here. A. Yes, sir.

"Q. I understand you to testify that those notes were given in part payment for part of the premium on this policy. A. The notes were given as final payment of the consumption of several years business with the Lumbermen's Reciprocal Association.

"Now, Mr. McDaniel, are you prepared to testify that those notes represent premium on this policy? I am referring to the policy which went into effect in October, 1927. A. I will say this much: At the time those notes were given there was a suit, I believe, in the court against us, and we had heard lots of stories about the Lumbermen's Reciprocal going broke and were rather afraid, was the reason the balance was as large as it was at the time. I deliberately held up the balance, seeing what the attitude of the Lumbermen's Reciprocal would be with reference to the suit that had been filed against us, and after several visits by a representative of the Lumbermen's Reciprocal Company, I finally decided it was the best thing to go ahead and give the notes and see what the outcome would be. I believe a day or two after the notes were signed the receivership was announced, and I really felt I had been tricked into giving the notes at the time.

"Q. Now, Mr. McDaniel, are you prepared to testify that the premium on this policy is represented in part or in whole by any of these three notes on which this suit is brought. A. I believe I said the notes as given was the balance due on what we owed. We didn't keep our records separate on any particular policy. Our records showed we owed the Lumbermen's Reciprocal just so much money.

"Q. And you further are not prepared to state what particular part, if any, of the premium on this policy of October, 1927, is represented by those notes? A. No; I say, it was just the general balance. I don't know what particular policies covered it.

"Q. You don't know what the premium on this policy was? A. I don't know the premium on any particular policy, what the amount of it, and as I say, I carried the Lumbermen's Reciprocal in one general balance."

It appears from the indorsements on the policies that they covered other liabilities than property damage in the erection of the Wilson building. Mr. McDaniel testified that plaintiff carried all of the defendants' insurance—compensation, public liability, and property damage insurance. The first policy shows by indorsement on the back that it covered the erection of the Wilson Hardware building, and the second by similar indorsement shows to have covered the erection of the Vaughan stores in Port Arthur and the Lake Charles Hotel at Lake Charles, La. So the premiums for these indemnities, not to mention others shown in the itemized account within the period covered by the notes, must or might have been included in the notes.

██ Defendants having pleaded a total failure of consideration for the execution of the three notes, the burden was upon them to prove such failure. Gutta Percha & Rubber Mfg. Co. v. City of Cleburne, 102 Tex. 36, 38, 112 S. W. 1047. However, under the plea of total failure of consideration, defendants could prove partial failure, but the proof must show the extent of such failure. Undoubtedly, it being undisputed that the 1927 policy covered damage to property, if any, growing out of the erection of the Wilson Hardware building, and said policy bound plaintiff, not only to defend any suit or suits, whether well founded or not, against defendants growing out of the erection of said building, and Dr. Wilson having brought such suit, and it being without dispute that plaintiff has failed to defend said suit, and confesses that it will not be able to discharge the judgment, if any, that may be ultimately rendered against defendants, at least a partial failure of the consideration for the notes is shown, but not the amount of same. Appellants assign error against the judgment complaining that appellees failed to meet the burden of proof of failure of consideration, either total or partial. This assignment must be sustained.

██ The assignment that the court erred in sustaining the plea of failure of consideration as against their itemized verified account amounting to $135.24, and insisting that there being no sworn denial of same or of any items therein, they should have had judgment, is overruled. If the account, consisting of many and various items of balances due upon premiums upon insurance policies relative to numerous and different contracts covered by the insurance, comes within the class of accounts within the statute, article 3736, R. S. 1925, as amended by Acts 1931, c. 239, § 1 (Vernon's Ann. Civ. St. art. 3736), we do not think that the itemization and data given relative to the various charges are sufficient to make it prima facie proof of its correctness. The vast majority of the items included in the account in the form, "2/1/20 —6/15/29 Audit General 16.16," varying only as to the dates and amounts, conveys to us no concrete idea of what the charge is for. The law intends, in such accounts, specific statements as to the date, the article or matter charged, and the amount. We do not think the account in question meets the requirements, if it is such act as falls within the statute. Further, we notice that there are but two of the many items of premiums said to be due that date subsequent to the date of the notes, July 16, 1930. It seems to be without dispute that the notes were given for the balance due on premiums to the date of the notes, July 16, 1930. As all of the items but two in the account are of dates prior to the execution of the notes, we are at a loss to understand how the notes could be for the balance due as of the date of the notes and still these items be not included in the notes.

The whole state of the record is unsatisfactory as to the certainty of the matters discussed. We therefore reverse the judgment and remand the case for another trial.

Reversed and remanded.